**Sonnenblick, Parker & Selvers, P.C.**
4400 Route 9 South, Suite 3000
Freehold, New Jersey 07728
(732) 431-1234
**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
WHALEHAVEN CAPITAL FUND, LTD., : Docket No. 1:13-cv-03570-AKH
DPIT 5, LLC AND OJA, LLC, : ECF CASE
:
Plaintiffs, :
:
v. : **AMENDED COMPLAINT**
: **AND JURY DEMAND**
SOUTHERN USA RESOURCES, INC., :
:
Defendant. :
:
------------------------------------------------------------X

Plaintiffs, Whalehaven Capital Fund, Ltd. ("Whalehaven"), DPIT 5, LLC ("DPIT"), and OJA, LLC ("OJA") for their Complaint against defendant, Southern USA Resources, Inc. ("SUSA") allege, as follows:

## INTRODUCTION

1. In 2012, plaintiffs were wrongfully induced to purchase SUSA securities based on the negligent words and negligent misrepresentations of defendant SUSA's President and CEO, Charles Merchant, Sr. ("Merchant"). Merchant induced plaintiffs to initially invest and continue to invest in SUSA with unrealistic gold production estimates and overstated capabilities of SUSA to process gold with "inadequate" equipment, which he sold to the company. Merchant repeatedly made these and other negligent words and negligent representations to induce plaintiffs to continue to invest in SUSA. Plaintiffs reasonably relied on the statements made by Merchant and were induced to their detriment to invest in SUSA.

2. The Securities and Exchange Commission announced the temporary suspension of the trading in the securities of the company. After plaintiffs' substantial investments, SUSA publically announced that it was ceasing operations due to a failure to capture commercially viable quantities of gold. SUSA never achieved or even came close to realizing the overstated and unrealistic gold production estimates prepared by Merchant that were made to induce plaintiffs' investments. This lawsuit seeks the return of the plaintiffs' investments based on the defendant's negligence, negligent misrepresentations and its unjust enrichment at the plaintiffs' expense.

## JURISDICTION AND VENUE

3. Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332 because plaintiffs are residents of a different State from defendant and because the value of the matter in controversy exceeds $75,000.

4. Venue in this District is proper pursuant to 28 U.S.C. §1391 because pursuant to the Subscription Agreement, the parties have consented to personal jurisdiction and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff, Whalehaven, is a duly incorporated Bermuda company in good standing with a place of business in Englewood, New Jersey.

6. Plaintiff, DPIT, is a Nevada limited liability company with a place of business in Holmdel, New Jersey. The sole member of the limited liability company is the Del Presto 2010 Irrevocable Trust. Samuel Del Presto is the sole Trustee of the Trust and a citizen of Holmdel, New Jersey. The beneficiaries of the Trust are Samuel Del Presto, his wife and his three children who are all citizens of Holmdel, New Jersey.

7. Plaintiff, OJA, is a Florida limited liability company with a place of business in Del Ray Beach, Florida. The members of the limited liability company are Hilary Marx-Auerbach and Jerome S. Auerbach who are citizens of New York, New York and Del Ray Beach, Florida, respectively.

8. Defendant, SUSA, upon information and belief, is a Delaware corporation with a place of business in Ashland, Alabama.

## FACTS

9. SUSA, formerly Atlantic Green Holding Company, is a natural resource exploration and development company. SUSA focuses primarily on the development of gold bearing properties in the Idaho Gold District of Clay County, Alabama. Defendant touted the exploration of this area by providing a recent geological survey of Alabama that estimated there was nearly 50,000 ounces of gold reportedly mined in the State since 1830 with the likelihood of an equal amount mined that has not been reported.

10. SUSA acquired ownership or mineral rights to several properties. SUSA's primary property, which it owns the land and mineral rights, is a 230 acre tract northwest of Ashland, Alabama. SUSA also acquired the mineral rights to an adjacent 230 acre tract and a 770 acre tract approximately five miles from its primary property.

11. Plaintiffs are entities that made investments in SUSA by purchasing SUSA securities.

12. Merchant was, at all relevant times, the President, CEO, CFO, Secretary and Director at SUSA. Merchant served as Chief Operating Officer of Tennessee National Corp., a $65 million precious metals holding company. He also served as VP of Operations for Consolidated Mining Co. of Alabama. Merchant served as Chairman and Chief Operating

Officer of JMAYS, LLC and Chief Executive and Operating Officer at Novastar Resources, LTD. He has over twenty (20) years of mining experience in Alabama and Utah.

13. Merchant obtained his undergraduate degree from the University of West Florida, a MBA from Jacksonville State University and a Doctorate Degree from American University. Merchant has been a licensed mining engineer in Alabama since 1997. Merchant has guest lectured at numerous universities. He has conducted extensive mining studies of the Alabama Gold Belt and authored a treatise on this subject.

14. Merchant, on behalf of defendant, conducted all of the negotiations and provided all of the information to plaintiffs to induce them to make their investments in SUSA.

15. On January 6, 2012, the parties conferred concerning a possible investment in SUSA at which time Merchant advised of SUSA's projected budget, assets, capabilities of the gold processing equipment, property and mineral rights acquisitions, mining operations and the anticipated gold production estimates.

16. The gold production estimates and gold processing equipment capabilities information provided to plaintiffs by SUSA were prepared by Merchant. Plaintiffs trusted that the information provided by SUSA would be accurate based upon Merchant's knowledge and experience of mining operations, particularly in Alabama, and relied on this information in making their investments. Plaintiffs, however, would later discover that defendant negligently represented gold estimates, equipment, and operational capabilities to the them, as follows:

- "The gross income Proforma based on an average 1.5 grams per ton at 40 tons per hour on regular mill run material for 8 hours per day for 5 days per week showing a minimum total of 2,400 grams per week with an average gross income of $123,751 per week."

- The gold production estimates were "based on data he was developing to be as close to accurate as possible."

4

- The equipment he was selling to SUSA for the gold mining process was "new, ready to commence the extraction of gold and would reduce operating costs."

- SUSA "owned and/or acquired mineral rights to several properties."

- SUSA was "ready to commence immediate gold mining operations."

17. In reliance on defendant's negligent words and negligent representations, the plaintiffs, deposited a total of $44,000.00, as earnest monies for investment in SUSA, as follows.

- Whalehaven    $20,000.00
- DPIT          $10,000.00
- OJA           $14,000.00

18. On January 31, 2012, approximately $50,000.00 of the deposit monies was released to commence the purchase of certain real property by SUSA and to pay legal fees.

19. The gold processing equipment was sold to SUSA by Merchant for fifty-nine (59%) percent of its common stock.

20. On March 19, 2012 the draft funding documents were circulated to the plaintiffs.

21. Plaintiffs, on April 27, 2012, as accredited investors made their initial investment with SUSA when they entered into, and closed the sale pursuant to a Subscription Agreement of Secured Convertible Promissory Notes ("Notes") in the total amount of $1,920,000.00, including the initial deposit.

22. Whalehaven invested $500,000.00, DPIT invested $350,000 and OJA invested $250,000.00 pursuant to the Subscription Agreements with SUSA.

23. The Notes were issued at an original issue discount of twenty (20%) percent and bear no additional interest. The Notes were convertible into shares of SUSA common stock at a

conversion price of $.25 per share, which was adjustable based on certain conditions. SUSA's obligations were secured by all of its assets pursuant to a Security Agreement.

24. A portion of the investors' funds was immediately released to complete the purchase of property and payment of closing costs while the remainder was held in escrow to be released monthly based upon budgets and gold production estimates prepared by defendant.

25. Over the next months, SUSA used the investors' funds to purchase property and equipment, and pay daily operating expenses in order to commence the exploration and development of the company's property. SUSA performed exploratory tests to determine the location of gold bearing ore and commenced the gold production process. The test results and daily gold production estimates were conveyed to the investors by defendant to insure the continued release of the investors' funds. Defendant provided the investors with photographs of gold laced ore and gold from test samples of panned ore.

26. Despite defendant's representation that it possessed all of the necessary equipment and its operation was ready for immediate gold production, plaintiffs' subsequently learned that defendant had to lease and purchase critical equipment and construct a facility at the property prior to commencing gold production.

27. On or about October 3, 2012, defendant requested additional funding from the investors and continued to make negligent words and negligent representations about the company's gold production capabilities to induce plaintiffs' additional investments. Defendant represented that it was only a matter of time before the gold processing would be fully operational and the company would start producing his gold estimates.

28. In order to induce plaintiffs to invest additional funds, defendant negligently represented the gold production estimates and processing capabilities of its operation. Defendant

negligently stated to the plaintiffs the following:

- A section of ore 8 feet wide by 900 feet long was located that "contained the consistence 3 grams we want on a continuing basis."

- "We currently have approximately 18 days of ore to crush and run. We will be able to stockpile around 55 tons per hour."

- "Goal for Thursday-Friday is a 16 ounces approximately one ounce per hour."

- "This is the way we will do the runs. Careful and accurate. If we over-run the material we risk losing valuable production due to our haste to meet a certain day goal."

- "We will meet our goal of 700 by December 31, 2012."

- "Second test same day, 3.2 grams per measured ton."

29.  Based on defendant's negligently calculated and represented gold production estimates and projections, plaintiffs continued to invest in SUSA. In reliance upon defendant's negligent words and negligent representations, plaintiffs made the following additional investments:

- On October 24, 2012

    Whalehaven   $60,000.00
    DPIT 5       $40,000.00

- On November 29, 2012

    Whalehaven   $60,000.00
    DPIT 5       $40,000.00

- On December 21, 2012

    Whalehaven   $40,000.00
    DPIT 5       $20,000.00

- On January 7, 2012

    Whalehaven   $52,000.00
    DPIT 5       $52,000.00

7

- On February 21, 2013

    Whalehaven   $42,675.00
    DPIT 5       $25,000.00

30. Plaintiffs were induced by defendant's negligent words and negligent representations to invest a total of $1,575,675.00 in SUSA.

31. SUSA has been unable to achieve the unrealistic gold production totals represented to plaintiffs from their due diligence period prior to entering into the Subscription Agreements through the monthly release of funds and additional funding made by plaintiffs. Defendant's negligent representations of production status and totals caused plaintiffs to continue to invest in defendant's operation. Further, the gold processing equipment sold to SUSA by Merchant was also not of the condition and capability represented by defendant to the investors.

32. On March 1, 2013 the Securities and Exchange Commission announced the temporary suspension of the trading in the securities of SUSA because of questions raised in the accuracy of assertions by SUSA in press releases and other public statements to investors concerning the company's operations and outstanding shares.

33. On March 5, 2013, SUSA publically acknowledged that it had encountered difficulties in its gold production process as its equipment was not able to capture gold in sufficient quantity during the process. During it's approximately ten months of operation SUSA only produced approximately 5.5 ounces (155.92 grams) of gold far less than 96,000 grams based upon the defendant's initial projections or even the defendant's adjusted projection of 700 grams by December 31, 2012.

34. Defendant has ceased production due to its failure to produce commercially viable

quantities of gold.

36. Plaintiffs were wrongfully induced to invest and to continue to invest in defendant based on the negligent representations and negligent words provided by defendant concerning the company's assets, gold processing equipment capabilities, gold bearing property/mineral rights and anticipated gold production estimates.

## FIRST CLAIM FOR RELIEF

### (NEGLIGENCE)

36. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

37. Defendant SUSA, by and through its employee, officer and director Merchant, caused Plaintiffs to rely upon their negligent words concerning the condition of the gold processing equipment and the potential gold production by the company creating a duty to plaintiffs when they relied upon this representation to invest in the company.

38. Defendant, contrary to Merchant's representations to plaintiffs to induce their investments, has publically acknowledged that its equipment was not adequate for gold production and that they could not achieve commercially viable gold production.

39. Defendant has breached the duty it owed to plaintiffs.

40. As a direct and proximate result of defendant's negligence, plaintiffs have incurred substantial damages.

## SECOND CLAIM FOR RELIEF

### (NEGLIGENT MISREPRESENTATIONS)

41. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

42. Defendant had a duty as a result of the special relationship between the parties to give correct information to plaintiffs.

43. Defendant, by and though its officer and director Merchant, made false representations as to the capabilities of defendant's gold processing equipment and gold production estimates that they knew or should have known was incorrect.

44. The information supplied by defendant in its representations was known or should have been known by defendant to be desired by plaintiffs for a serious purpose.

45. In addition, or alternatively, defendant negligently omitted to state material facts necessary to make the statements made not misleading and necessary to inform plaintiffs fully.

46. Plaintiffs intended to rely and act on defendant's representations.

47. Plaintiffs reasonably relied on defendant's representations and/or omissions to their detriment incurring substantial damages.

**THIRD CLAIM FOR RELIEF**

**(UNJUST ENRICHMENT)**

48. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of the Complaint as set forth at length herein.

49. Defendant has been unjustly enriched and benefitted at plaintiffs' expense when they negligently represented certain capabilities and financial expectations of the company to induce plaintiffs' investments.

50. It is against equity and good conscience to permit defendant to retain the investment monies.

51. As a direct and proximate result of defendant's actions, plaintiffs have incurred substantial damages.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request the Court to grant the following relief:

(a) Awarding compensatory damages;

(b) Awarding incidental and consequential damages;

(c) Awarding pre-judgment and post-judgment interest;

(d) Awarding attorney's fees and cost of suit; and

(e) Granting such further relief as the Court may deem equitable, just and necessary.

Dated: September 24, 2013

**Sonnenblick, Parker & Selvers, P.C.**
Attorneys for Plaintiffs

By: _____
JEROME M. SELVERS   (1427)

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by a jury as to all issues pursuant to FRCP 38(b).

Dated: September 24, 2013

**Sonnenblick, Parker & Selvers, P.C.**
Attorneys for Plaintiffs

By: _____
JEROME M. SELVERS   (1427)