USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/7/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
WHALEHAVEN CAPITAL FUND, LTD., DPIT                           :
5, LLC, AND OJA, LLC,                                         :          **ORDER GRANTING DEFAULT**
                                                              :          **JUDGMENT**
                                        Plaintiff,            :
         -against-                                            :          13 Civ. 3570 (AKH)
                                                              :
SOUTHERN USA RESOURCES, INC.                                  :
                                                              :
                                        Defendant.            :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs filed their complaint against defendant, Southern USA Resources, Inc.

("SUSA"), on May 28, 2013. Following a waiver of service executed by defendant's appointed

agent for service in Delaware, defendant defaulted in further appearance. No answer was filed.

The Clerk of the Court issued a certificate of default on November 21, 2013. On November 27,

2013, plaintiffs moved for entry of a default judgment against SUSA.

On December 3, 2013, I granted plaintiffs' motion for default judgment. Upon

further consideration, however, I ordered supplemental briefing to ensure that plaintiffs

sufficiently set out a legal basis for their claims for relief. Plaintiffs then submitted supplemental

briefing. Having reviewed the supplemental briefing, I now grant plaintiffs' default judgment

for the reasons stated below.


## I.    Background

SUSA was a natural resource exploration and development company. It acquired

ownership and mineral rights over several properties in Ashland, Alabama that were purportedly

gold bearing. In their amended complaint, plaintiffs seek the return of funds they invested in

SUSA that they made based on negligent representations of the properties' gold-bearing potential

1

and SUSA's capacity to mine and process that gold. Plaintiffs made a series of investments over a 12-month period based on representations made by SUSA's President and CEO Charles Merchant, Sr. ("Merchant"). Merchant conducted all investment negotiations with plaintiffs and provided them with all relevant information to induce their investments. Plaintiffs allege that they were wrongfully induced to purchase SUSA securities and to continue to invest in the company.

Plaintiffs' allegations boil down to the fact that Merchant repeatedly, over a period of at least ten months, made false statements regarding SUSA's mining and processing capabilities as well as the land's potential to produce gold. Merchant did this, plaintiffs allege, to induce them to continue to make investments in SUSA. Merchant prepared and distributed all of the gold production estimates and gold processing equipment capabilities information provided to the plaintiffs. The test results and daily gold production estimates were conveyed to the plaintiffs by Merchant to ensure the continued release of their funds. Defendant provided the investors with photographs purporting to be gold laced ore and gold from test samples of panned ore.

On January 6, 2012, Merchant discussed with plaintiffs the properties to be mined by SUSA in Alabama and the requisite budget. On January 10, 2012, Merchant represented to plaintiffs that he determined an "average gross income of $123,751.00 per week," based upon an "average of 1.5 grams per ton – 40 tons per hour on regular mill run material – 8 hours per day on run – 5 days per week showing a minimum total of 2,400 grams per week." Merchant further represented to plaintiffs in an email that these calculations were "based on data we have been developing so that we could be as close to accurate as possible."

2

On June 2, 2012, Merchant provided photographs of the mining equipment that SUSA allegedly possessed; he also represented that this state-of-the-art equipment would permit SUSA to begin mining for and processing the gold at full capacity immediately. He also represented that the SUSA equipment used to mine and process the gold was "new, ready to commence the extraction of gold and would reduce operating costs." These representations were clearly false as is shown by the fact that at the same time Merchant had to lease and then purchase critical equipment that SUSA was missing. None of this was communicated to the plaintiffs.

On October 17, 2012, Merchant represented that the total gold production to date was approximately three ounces and "set a goal of 16 ounces by Thursday-Friday of that week." Merchant further affirmed by email that SUSA would "meet their goal of 700 [ounces] by December 31, 2012." Yet, during its ten months of mining operations, SUSA only produced approximately 5.5 ounces of gold.

Throughout this exchange of information, Merchant informed plaintiffs that the gold projections were "based on data we have been developing so that we could be as close to accurate as possible." Importantly, the grand majority of Merchant's alleged statements make factual, quantitative guarantees to plaintiff-investors regarding the likely production of the supposedly gold-bearing property. As a result, plaintiffs allege that they "trusted the information" that Merchant provided, based on his "knowledge and experience of mining operations," and invested $44,000 as "earnest monies." On April 27, 2012, plaintiffs invested $1,100,000 (which subsumed the earnest money they gave), through a subscription agreement and in exchange for the company's secured, non-interest bearing, convertible promissory notes in the face amount of $1,920,000.

3

On March 1, 2013, the Securities and Exchange Commission ("SEC") announced the temporary suspension of trading of SUSA because of "questions raised in the accuracy of assertions by SUSA in press releases and other public statements." On March 5, 2013, SUSA filed an 8-K with the SEC stating that it had "encountered difficulties in its gold production process" so it had "decided to temporarily cease its production activities until it can make the necessary adjustments to its processes and equipment, and/or add additional equipment, which it believes will allow it to produce commercially viable quantities of gold." Plaintiffs sue SUSA by and through its employee, officer and director Merchant, for negligence, negligent misrepresentation, and unjust enrichment.

## II.    Discussion

Plaintiffs move for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). A party's default is deemed to constitute a concession of all well pleaded allegations of liability except those related to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Because this case comes before me in diversity jurisdiction, 28 U.S.C. § 1332, New York law governs the substantive disputes. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).   Plaintiffs' complaint sets out a claim for negligence, negligent representations, and unjust enrichment under New York law.

To state a claim for negligent misrepresentation under New York law, plaintiff must show that: (1) defendant had a special relationship with plaintiff and thus a duty to give plaintiff correct information; (2) defendant made a false representation that it should have known was incorrect; (3) defendant knew the information supplied was incorrect and was "desired by the plaintiff for a serious purpose;" (4) plaintiff relied upon this information and acted upon it to his detriment. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000).

4

To determine whether a special relationship existed and thus the requisite duty of care was shown, I must consider if the person making the representation "held or appeared to hold unique or special expertise" and whether a special relationship of trust or confidence existed between the parties such that the speaker was aware of how the plaintiff would use the information. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 2013 WL 837536 (S.D.N.Y. March 6, 2013); *see also In re Facebook, Inc.*, 2013 WL 6621024 (S.D.N.Y. Dec. 12, 2013). Here, that relationship and thus the duty are clearly alleged as defendant was aware that plaintiffs were making additional investments based on Merchant's representations about SUSA's property, equipment, and progress.

Merchant's statements and predictions were essentially worded as guarantees and are therefore actionable under Second Circuit law. *See, e.g., Goldman v. Belden,* 754 F.2d 1059 (2d Cir. 1985). Negligent representations, such as those made by Merchant, are actionable under New York law when the defendant carelessly imparts "words upon which others were expected to rely and upon which they did or failed to act to their damage." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005). Furthermore, plaintiffs allege that Merchant knew the statements he was making were false and deliberately misleading and that he was providing the information with the intent to induce plaintiffs to make further additional investments which they did.

Under Fed. R. Civ. P. 9(b), these claims must be pled with particularity, meaning that plaintiff must identify the specific fraudulent statements, identify the speaker, and plead where and when the statements were made and why they were fraudulent. *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985). Plaintiffs' complaint meets this particularity requirement as well since it identifies the speaker (Merchant), the actual statements made, and the dates on which these statements were made. Plaintiffs also sufficiently allege that they reasonably relied on these representations to their detriment, resulting in continued investments in the sinking ship

5

that was SUSA. Plaintiffs therefore successfully make out a claim for negligent
misrepresentation.

To establish plaintiffs' second count, a negligence claim under New York law,
plaintiff must sufficiently plead a duty; breach of that duty; and proximate cause. *Kievman v.
Phillip*, 924 N.Y.S.2d 112 (2d Dept. 2011). Here again, defendant had a duty to provide accurate
and reliable information to plaintiff-investors. This failure was a breach of defendant's duty and
as a result plaintiffs were harmed. Plaintiffs' negligence claim, which is not subject to the
particularity requirement of Fed. R. Civ. P. 9(b), is also pled sufficiently for the same reasons
discussed above and therefore granted.

Lastly, plaintiffs seek relief under the equitable doctrine of unjust enrichment. To
prevail on an unjust enrichment claim, plaintiffs must show that defendant was enriched at
plaintiff's expense and that it would be "against equity and good conscience to permit defendant
to retain what is sought to be recovered." *Northern Shipping Funds I, LLC v. Icon Capital
Corp.*, 2014 WL 700198 (S.D.N.Y. 2014). Here defendant was clearly enriched by taking
money from plaintiffs under false pretenses and so that unjust enrichment claim is also granted.

Defendant's default does not relieve me of my duty to ensure that the complaint
sufficiently states a claim and a proper legal basis for which relief may be granted. *Au Bon Pain
Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Liberty Mutual Insurance Co. v. Palace Car
Services Corp.*, 2007 WL 2287902 (E.D.N.Y. Aug. 8, 2007). Here, plaintiffs have sufficiently
proven damages to a reasonable certainty as they must if I am to award damages. *Liberty Mut.
Ins. Co. v. Fast Lane Car Service, Inc.*, 681 F. Supp. 2d 340 (E.D.N.Y. 2010). Hillary Marx-
Auerbach, the managing member of OJA, LLC ("OJA") submitted an affidavit establishing that
OJA invested, in installments, a total of $250,000 in SUSA. The affidavit included copies of
wire transfers from banks setting out the transactions as well as a copy of the sale of SUSA

6

securities to Marx-Auerbach. Samuel DelPresto, the Managing Member of DPIT 5, LLC ("DPIT 5") submitted an affidavit establishing that DPIT invested a total of $537,000.00 in SUSA. The affidavit included copies of wire transfers from banks setting out the transactions as well as a copy documenting the sale of SUSA securities to DelPresto. Michael Finkelstein, the CEO and Investment Manager of Whalehaven Capital Fund, LLC ("Whalehaven") submitted an affidavit establishing that Whalehaven invested a total of $774,675.00 in SUSA. Finkelstein submitted an affidavit establishing that OJA invested, in installments, a total of $250,000 in SUSA to Finkelstein.

I therefore grant plaintiffs' motion for default judgment in the amount of $1,561,675.00. This order vacates my previous order dated December 3, 2014 (Doc. No. 41). The clerk shall mark the motion (Doc. No. 35) terminated and the case closed.

SO ORDERED.

Dated: July ___, 2014
        New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

7